**COMMERCIAL CARRIERS, Inc.**

v.

**UNITED STATES.**

No. 532-53.

United States Court of Claims.

May 7, 1958.

Louis I. Dailey, Memphis, Tenn., for plaintiff. Harold G. Hernly and Wrape & Hernly, Memphis, Tenn., were on the briefs.

Lewis A. Dille, Kensington, Md., with whom was Asst. Atty. Gen., George Cochran Doub, for defendant. Paris T. Houston, Washington, D. C., was on the briefs.

JONES, Chief Judge.

Plaintiff sues for additional motor carrier transportation charges on two counts. Under the first count the plaintiff claims the sum of $11,120.62. On the basis of our decision in the case of Commercial Carriers, Inc., v. United States, 127 F.Supp. 197, 130 Ct.Cl. 387,

the parties have agreed that plaintiff is entitled to recover the sum of $4,954.22. There is, therefore, no longer an issue as to Count One.

Count Two is for additional charges for the transportation of mobile steam laundry equipment from Moline, Illinois, to Savannah, Georgia, and to Bell Bluff, Virginia, during the period April 1, to August 1, 1943.

Plaintiff claims the additional rate based on the use of special equipment which it alleges was installed for the purpose of handling the transportation of the excessively heavy laundry machinery. It invokes the published tariff filed with the Interstate Commerce Commission designated as Motor Freight Tariff 1–B, H. E. Baker, Agent, MF-I.C.C. No. 3.

The defendant contends that the plaintiff should be paid on the basis of railway tariffs with land-grant deductions pursuant to a Standard Motor Freight Land Grant Equalization Agreement executed by plaintiff and defendant on August 13, 1942.

The parties are agreed that if plaintiff's position is correct it should recover the sum of $15,698.36 on this count and that if the defendant's position is sustained plaintiff would be entitled to recover the sum of $2.63.

Prior to our entry into World War II, the plaintiff's equipment had been mainly used in the transportation of automobiles. It consisted of power units to which were attached automobile carrier trailers.

During the war the hauling of automobiles became less important and plaintiff sought to utilize its equipment in transportation for the United States, adapting its equipment for the changed use where necessary.

The trailers involved in Count Two, after the additional installation, and when loaded, weighed 19,720 pounds each, instead of 6,000 to 8,000 pounds, which they weighed when empty. With the added weight plaintiff did not consider it safe to haul more than one of such loaded trailers at a time, and cer-

tain changes in the fifth wheel and the brakes of its power unit were necessary to adapt them to the hauling of the laundry trailers. Consequently, plaintiff was unwilling to transport laundry trailers from Moline, Illinois, to Savannah, Georgia, and Bell Bluff, Virginia at land-grant rates.

Plaintiff then advised the office of the Traffic Control Division, War Department, Washington, D. C., that it could not haul this particular equipment at land-grant rates, but that it was prepared to publish the rate for this type of service at 30 cents per mile. It also advised the Traffic Control Division that it had specially adapted its equipment to the handling of the units by use of a fifth wheel and proper brake hookups and had the rights to New Orleans, but that it would be necessary to obtain Interstate Commerce Commission permission to serve the eastern seaboard.

Conferences were held with the officials of the Transportation Corps of the Army at which conferences plaintiff advised that before it could agree to the transportation involved plaintiff would require an exception to the Standard Motor Freight Land Grant Equalization Agreement previously executed by the plaintiff. This change was acceptable to the Army Transportation Corps on account of the scarcity of railroad rolling equipment, and the advantage of more expeditious delivery by motor carrier.

The exception to the Land Grant Equalization Agreement was noted by incorporating in Motor Freight Tariff 1–B, H. E. Baker, Agent, MF-I.C.C. No. 3 the following statement:

"Notice

"Rates named herein are based on the use of special equipment by carriers parties hereto and are not subject to Land Grant Deductions."

This was an accepted and recognized method of noting an exception and the specific language was suggested and supplied by the Transportation Corps of the Army.

The services were performed on Government bills of lading which bore on their face reference to the special tariff described above.

The case is largely a factual one. The pattern has been set in decisions by the Interstate Commerce Commission and by the courts. Consequently, no request has been made by either party to have the question referred to the Interstate Commerce Commission.

The Government contracted for certain specific services at a specific rate, with full knowledge of all the circumstances. It was fully aware that plaintiff was unwilling to perform the services at other than the agreed rate. The customary method of giving notice of the change in the rate to be applied was followed; in fact, the exact language to be used was suggested by Major Riegel of the Transportation Corps of the United States Army. As was stated in the opinion in Greyhound Corporation v. United States, 111 F.Supp. 259, 264, 124 Ct.Cl. 758, 767, "To support the defendant's contentions would result in inflicting on the plaintiff a contract which, if it had been afforded the opportunity, it would have rejected."

There is no dispute in the record in the instant case as to the fact that plaintiff's representatives advised the officials of the Government that it would move the laundry trailers only if it was clearly understood that plaintiff would be compensated in accordance with the special tariff, free from any land-grant deductions. In fact, Major Riegel testified to this effect and expressed the opinion that the rates in the special tariff applied.

The installation of the fifth wheel at considerable expense and the alteration of the brakes constituted equipment not required or used by plaintiff commercially and were of sufficient substance to fit the description of "special equipment". They were so considered by the officials of the Army Transportation Corps which recommended the language used in Motor Freight Tariff 1–B, H. E. Baker, Agent, MF-I.C.C. No. 3 as appropriate and suffi-

cient to entitle plaintiff to the tariff which it claims under Count Two.

The authorized representatives of the Government, with full knowledge of the facts, made a contract. They could not have secured the transportation without agreeing to the special rates which were agreed upon and notice given in the customary legal and binding fashion. Due to war conditions railway cars were not available and the record indicates that even if they had been, the excessively expensive packaging for shipment by railway would have more than made the difference. At any rate, with full knowledge of all the facts a voluntary contract was made. We cannot think of a single good reason why the Government should not live up to its agreement.

The plaintiff is entitled to recover the sum of $4,954.22 on Count One and the sum of $15,698.36 on Count Two, a total of $20,652.58, and judgment will be entered in that amount.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, Judges, concur.

See also 127 F.Supp. 601, 130 Ct.Cl. 481.